_____

JENEAKE TORRES,                          :
                                         :
                Plaintiff,               :
                                         :
        v.                               :        No. 5:17-cv-01890
                                         :
COUNTY OF BERKS,                         :
                                         :
                Defendant.               :

_____

**O P I N I O N**

**Defendant's Motion for Summary Judgment, ECF No. 30 – Granted**

**Joseph F. Leeson, Jr.**                                    **January 26, 2018**
**United States District Judge**

## I.      Introduction

Defendant County of Berks moves for summary judgment on Plaintiff Jeneake Torres's claims that the County (1) discriminated against her on the basis of her disability and on the basis of her exercising her rights under the Family and Medical Leave Act (FMLA), and (2) interfered with her rights under the FMLA. Because Torres has failed to set forth facts from which a reasonable jury could find in her favor on these claims, the County's motion is granted.

## II.      Background

The following facts are either undisputed or viewed in the light most favorable to Torres, the non-moving party.[1]

### A.      Torres's employment at the Berks County Residential Center

Torres began her employment with the County as a shelter case counselor at the Berks County Residential Center ("BCRC") on October 9, 1998. Def.'s Statement of Facts (Def.'s

---

[1]      The facts are taken substantially from the parties' submissions.

Facts) ¶ 1, ECF No. 31. The BCRC provides a setting for undocumented illegal immigrants seeking asylum to maintain family unity while the Department of Homeland Security Immigration and Customs Enforcement (DHS-ICE) enforces immigration laws. Def.'s Facts ¶ 2. The duties of a shelter care counselor are "to provide the children in the shelter care program with an ongoing understanding of their situation" and to maintain "an atmosphere of security and understanding . . . through continued training and interaction with other social service agencies." *See* Pl.'s Resp. Def.'s Facts (Pl.'s Facts), Ex. CC, ECF No. 33-29.

**B.      Torres's leave under the Family and Medical Leave Act**

On February 13, 2012, Torres was granted intermittent leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, *et seq.*, for depression and anxiety, providing her an absence of up to eight hours per episode, three times per week, from January 18, 2012, through January 17, 2013. Def.'s Facts ¶ 4. The form that the County provided to Torres for both her initial intermittent FMLA leave approval and all subsequent renewals stated that Torres was required to "[f]ollow [her] department's procedure regarding calling off prior to the start of [her] shift." *See* Def.'s Facts ¶¶ 5, 6, 7, 9, 10, 14.

On January 15, 2013, Torres's intermittent FMLA leave was renewed from January 18, 2013, through January 17, 2014. Def.'s Facts ¶ 6. On August 12, 2013, Torres was approved for intermittent FMLA leave for her depression and anxiety from August 1, 2013, through July 31, 2014. Def.'s Facts ¶ 7.[2] On July 16, 2014, Torres's intermittent FMLA leave was renewed from August 1, 2014, through July 31, 2015. Def.'s Facts ¶ 9. On September 9, 2015, Torres's

---

[2]      This period of intermittent FMLA leave appears to overlap with Torres's intermittent FMLA leave from January 2013 to January 2014. The parties do not address or explain this apparent overlap, however, and it is not at issue in this case.

intermittent FMLA leave was renewed from August 24, 2015, through August 23, 2016. Def.'s Facts ¶ 10.

On January 27, 2016, Torres provided the County with a request for FMLA leave associated with a then-undiagnosed condition which caused diarrhea. Def.'s Facts ¶ 11. On February 3, 2016, the County approved Torres to take a leave of absence for surgery associated with her FMLA-requested condition for the period from March 2, 2016, through March 8, 2016. Def.'s Facts ¶ 12.

On August 12, 2016, Torres's intermittent FMLA leave for her depression and anxiety was renewed from August 24, 2016, to August 23, 2017. Def.'s Facts ¶ 14.

From January 1, 2014, until Torres's termination on August 23, 2016, Torres called off work using intermittent FMLA leave on 128 occasions. Def.'s Facts ¶ 15.

**C.      The County's and the BCRC's policies and procedures**

Pennsylvania law mandates that the BCRC have present at the facility a certain number of counselors per number of residents. Def.'s Facts ¶ 17. Based on these ratios, the BCRC may mandate other employees to cover shifts or stay late to make up for an employee who is late or provides for a late call-off. Def.'s Facts ¶ 19.

The BCRC's written Standard Operation Procedures state that employees are to provide a minimum one-hour notice before the start of the assigned shift to report off for sick leave. Def.'s Facts ¶ 20. The County has a written Time and Attendance Disciplinary Guideline Matrix that identifies the misconduct and the range of discipline for an offense under each transgression. Def.'s Facts ¶ 21. The Guideline Matrix indicates the disciplinary actions for late call-offs and lateness as follows: (i) First Offense – Oral Warning; (ii) Second Offense – Written Warning; (iii) Third Offense – 1-Day Paper Suspension; (iv) Fourth Offense – 3-Day Paper Suspension;

and (v) Fifth Offense – Termination. Def.'s Facts ¶ 22. The County's Time and Attendance Policy states that "[i]f an employee receives two (2) suspensions under any of the different categories on the . . . matrix, subsequent violations of any category, which would result in suspension, will result in termination of employment." Def.'s Facts ¶ 23. Torres acknowledged in writing on several occasions throughout her employment that she had read the County's policies. Def.'s Facts ¶ 24.

### D. The County's disciplinary actions against Torres

On November 19, 2014, Torres called off work after the start of her shift, Def.'s Facts ¶ 26,[3] for which she incurred a late call-off infraction and was disciplined with an oral warning, Def.'s Facts ¶ 27. This disciplinary action, like all of the subsequent disciplinary actions Torres received, was memorialized by a Disciplinary Action Report prepared by the County and signed by Torres and her supervisor.[4] On February 15, 2015, Torres called off work an hour and forty minutes after the start of her shift, for which she incurred another late call-off infraction and was disciplined with a written warning. Def.'s Facts ¶¶ 28-29.[5]

---

[3]    Torres denies this asserted fact "as stated" and explains that she was unable to work on November 19, 2014, due to flare-ups of her medical condition, which also prevented her from timely calling out on that date. *See* Pl.'s Facts ¶ 26. But this explanation of why Torres called off after the start of her shift, even assuming it is true, does not actually deny that she called off after the start of her shift, which is the only fact asserted in paragraph 26 of the County's Statement of Facts.

[4]    Torres signed all of her Disciplinary Action Reports except for her final report in August 2016, which is discussed below.

[5]    Torres asserts that she was unable to work on this date due to her medical condition, which also prevented her from timely calling off work on that date. *See* Pl.'s Facts ¶ 28.

In addition to these "late call-off" infractions, from April 2014 to April 2015 Torres also accumulated four "lateness" infractions for arriving at work late. As a result of the four lateness infractions, the BCRC disciplined Torres with a three-day suspension. Def.'s Facts ¶ 31.[6]

On December 10, 2015, Torres called off work fifty minutes after the start of her shift, for which she incurred another late call-off infraction and was disciplined with a one-day paper suspension. Def.'s Facts ¶¶ 32-33. On January 21, 2016, Torres called off work an hour and fifteen minutes after the start of her shift, for which she incurred another late call-off infraction and was disciplined with a three-day paper suspension. Def.'s Facts ¶¶ 34-35.[7] This suspension was the third suspension Torres had received over the previous year—the other two being the December 2015 one-day paper suspension for Torres's late call-off infractions and the April 2015 three-day suspension for Torres's lateness infractions.

Joanna Baittinger, the Senior Human Resources Administrator for the County, testified that although "having three suspensions in a 12 month period could lead to termination" under the County's policies, the County ultimately decided to give Torres a "last chance final opportunity" due to the fact that the time and attendance policy "can be a little complicated." Def.'s Facts Ex. 9, Baittinger Dep. Tr. 32:15-33:3, 57:20-58:5, ECF No. 31-9. A last chance agreement was included as part Torres's February 2016 Disciplinary Action Report, which stated in pertinent part as follows:

> You are being provided one last opportunity to follow all guidelines per the Time and Attendance Policy. This is a non-precedent setting opportunity as these actions could have resulted in your termination of employment. Any other violations of the Time and Attendance policy in the next twelve (12) months will result in your employment being terminated.

---

[6]     The four lateness infractions occurred on April 6, July 31, and October 9, 2014, and April 14, 2015.

[7]     Torres asserts that she was unable to work on this date due to her medical condition, which also prevented her from timely calling out on that date. *See* Pl.'s Facts ¶ 34.

Def.'s Facts Ex. 12. Torres signed and acknowledged the Disciplinary Action Report that contained this last chance agreement. Def.'s Facts ¶ 38.

**E. Torres's overtime shift and employment termination**

Torres signed up for, and was awarded, an overtime shift for Friday, July 29, 2016, starting at 4:15 p.m. Def.'s Facts ¶ 39. The "Overtime Distribution Sheet" provided to Torres stated the following: "If you decide to decline the overtime you have been awarded you are required to provide written notice, a minimum of 72 hours prior to the start of the shift of overtime." Def.'s Facts ¶ 40. On Friday, July 29, the date of Torres's scheduled overtime shift, she did not arrive on time and did not call off. Def.'s Facts ¶ 41. At 4:30 p.m., fifteen minutes after the start of the shift, the supervisor on at that time, Len Kopetsky, called Torres and left a message inquiring about her absence. Def.'s Facts ¶ 42. Torres called back and told Kopetsky that she thought her overtime shift was for the following day (Saturday). Def.'s Facts ¶ 43. Torres ultimately appeared for her overtime shift an hour and fifteen minutes late. Def.'s Facts ¶ 44. Supervisors Tim Phillips and Ben Schneider subsequently had a meeting with Torres in which she again indicated that her reason for being late was that she thought her overtime shift was Saturday instead of Friday. Def.'s Facts ¶ 45.

On August 2, 3, and 4, 2016, Torres took three days of intermittent FMLA leave. Pl.'s Facts ¶ 101.[8]

On August 23, 2016, Torres was provided with a Disciplinary Action Report stating that her employment was terminated. In pertinent part, the Report states as follows:

---

[8] The County denies "as stated" this and other asserted facts in paragraph 101 of Torres's Statement of Facts, but does not explain the basis for its denial. *See* Def.'s Reply Pl.'s Facts ¶ 101, ECF No. 35.

On Friday, July 29, 2016, you were awarded a posted overtime shift starting at 1615 hrs. You did not punch in for this shift until 1730 hrs making you one hour and fifteen minutes late for the scheduled start time.

On February 8, 2016, you were provided one last opportunity to follow all guidelines per the Time and Attendance Policy as a result of continued violations. This was a non-precedent setting opportunity that stated that any future Time and Attendance Policy violations in the next twelve (12) months will result in your employment being terminated.

This lateness is an infraction of the County of Berks Time and Attendance Policy, along with your previous infractions; this is the basis for your termination.

Def.'s Facts Ex. 12 at BC 1404, ECF No. 31-12.

## F.    Torres's Harassment Allegations

According to Torres, Ralph Maldonado, a maintenance man at Berks County, made comments to her such as "I cannot believe you're here today, you actually showed up to work" on approximately six occasions over a six-month period in 2016. Def.'s Facts ¶ 56. Dave Davis, a co-worker of Torres's, allegedly made comments to Torres such as "you are never here" or "staff are never here" on one occasion in the winter of 2016. Def.'s Facts ¶ 57. Innocent Alozie, a DHS-ICE employee not employed by Berks County, allegedly made comments to Torres such as "I cannot believe you are here, you're never here" on approximately twenty different occasions within the two years prior to Torres's termination. Def.'s Facts ¶ 58. James Stednick, a co-worker of Torres's, allegedly made comments to her such as "I cannot believe you are here, you're never here, why don't you come to work" or "when you come to work you're a good worker. You need to come to work," four or five times over the 2016 year. Def.'s Facts ¶ 59. Jamie Himmelberger, a co-worker of Torres's, allegedly made comments to her such as "I wish I had a doctor that would put me out of work for one month" on two occasions within the two weeks following Torres's return from surgery in March 2016. Def.'s Facts ¶ 60. None of these persons held supervisory positions over Torres during her employment. Def.'s Facts ¶ 61.

Torres never told anyone who worked at the BCRC what her qualifying medical condition was for her FMLA leave. Def.'s Facts ¶ 62. Brandon Witmer, a supervisor of Torres, allegedly stated "it is a shame that people have diarrhea" one time prior to March 2016, a statement that Torres assumed was because of her FMLA paperwork. Def.'s Facts ¶ 63.

## G.      Procedural History

Torres filed her initial Complaint in this matter in April 2017. She filed an Amended Complaint in September 2017, alleging that the County discriminated against her, retaliated against her, and subjected her to a hostile work environment on the basis of her disabilities, in violation of the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA), and that it interfered with her ability to exercise her rights under the FMLA and retaliated against her for attempting to exercise those rights. In December 2017, the County filed the present Motion for Summary Judgment, seeking judgment in its favor on all of Torres's claims.

## III.      Standard of Review—Summary Judgment

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if the fact "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the evidence favoring the nonmoving party is "merely colorable" or "not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). The parties must support their respective contentions—that a fact cannot be or is genuinely

disputed—by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

## IV.     The County is entitled to summary judgment on each of Torres's claims.

The County contends that Torres has failed to set forth a sufficient factual basis for any of her claims. In particular, the County contends that it did not fail to accommodate Torres's disabilities and that it had a legitimate, nondiscriminatory reason for terminating Torres's employment after her numerous violations of its Time and Attendance Policy and, ultimately, her failure to comply with the last chance agreement. Further, according to the County, Torres cannot show that she was subjected to a hostile work environment on the basis of her disability, as the alleged comments made toward her were not severe or pervasive, nor were they based on her disabilities. Finally, the County contends that it never interfered with Torres's ability to exercise her rights under the FMLA, nor did it retaliate against her for using FMLA leave. Torres responds that she has set forth sufficient facts to prevail on each of the theories articulated in her Amended Complaint and addressed in the County's Motion.  For the reasons explained below, the Court finds that the County is entitled to judgment on each of Torres's claims.

## A.     Torres cannot point to any evidence from which a reasonable jury could conclude that the County refused to accommodate her disabilities.

Torres contends that "the primary thrust of her claims" in this lawsuit is that the County refused to accommodate her disabilities. *See* Pl.'s Mem. Opp'n 6, ECF No. 34. The Court will therefore begin by considering this claim. According to Torres, when she called off work late on November 19, 2014, February 15, 2015, and January 21, 2016, she informed the County that she was utilizing sick time and, by so doing, "requested the reasonable accommodation of time off

for medical reasons due to her disability." Pl.'s Mem. Opp'n 8.[9] Torres contends that her

supervisors "conducted no inquiry" as to why she was calling out sick on these dates; had they

done so, Torres's supervisors "would have learned that [Torres] was not able to get to a phone

any sooner as a result of her medical conditions," a condition that they could have reasonably

accommodated. Pl.'s Mem. Opp'n 10.[10] Instead, according to Torres, the County "failed to

accommodate [her], in failing to give her any leeway in calling out late on dates which she was

not medically able to work, and called as soon as she was able to." Pl.'s Mem. Opp'n 9.

The County contends that, during the period of the disciplinary actions, Torres "was on

FMLA, had additional intermittent FMLA available, and was continually utilizing FMLA."

Def.'s Reply Br. 2, ECF No. 36. Accordingly, "providing [her] with additional FMLA would

have had no impact on her failure to call off in a timely manner." *Id.* at 3. Further, the County

contends that Torres "does not, and never has asserted, that she advised supervisors that she was

unable to call off on time because of her disability." *Id.* The County states that Torres had

successfully called off in accordance with the County's time and attendance polices over one

hundred times and that she had ample opportunity to advise the County that her disability

---

[9]     Torres asserts that she submitted to the County notes from Dr. Luciano Migliarino stating that Torres was not medically able to work on these dates. *See* Pl.'s Facts Ex. P, ECF No. 33-16. The note for Torres's absence on November 19, 2014, simply states that "[i]t is my [Dr. Migliarino's] medical opinion that [Torres] be excused from work on 11/18/2014 and 11/19/2014." *Id.* at BC 00184. The note for Torres's February 15, 2015 absence similarly states "[i]t is my medical opinion that [Torres] be excused from work 2/15/15 and 2/15/16." *Id.* at BC 00181. The note for the January 21, 2016 absence provides some information about the symptoms that prevented Torres from working on that date, but does not appear to state that Torres's symptoms would have prevented her from timely calling off from work.

[10]     As part of her response to the County's motion for summary judgment, Torres submitted an affidavit asserting that her disabilities prevented her from timely calling off work on the dates in question, and that she called off as soon as she was able. *See* Pl.'s Facts Ex. BB, Torres Aff., ECF No. 33-28. As this assertion appears nowhere in the Complaint or Amended Complaint, or anywhere else in the record (prior to Torres's affidavit), the County contends that the Court should disregard this portion of Torres's affidavit. The Court declines to do so.

prevented her from timely calling off, but she never did so. In particular, the County observes that the Disciplinary Action Reports Torres received "clearly identify a space to provide a reason or response for the offense prior to signing, which Ms. Torres never did." *Id.* at 4.

To establish a prima facie case of discrimination under the ADA,[11] a plaintiff must show (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an "adverse employment decision" as a result of discrimination. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004). "Adverse employment decisions in this context include refusing to make reasonable accommodations for a plaintiff's disabilities." *Id.* "Reasonable accommodation" in this context "'includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith,' . . . under what has been termed a duty to engage in the 'interactive process.'" *Id.* (quoting *Mengine v. Runyon*, 114 F.3d 415, 416 (3d Cir. 1997)). An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Id.* (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319 (3d Cir. 1999)).

As part of this interactive process, the employee must make clear, either by direct communication or other appropriate means, that she wants assistance for her disability. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010). The employer "must have enough

---

[11] Torres's PHRA claims are analyzed coextensively with her ADA claims. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation." *Id.* (quoting *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003)). "[T]he law does not require any formal mechanism or 'magic words' to notify an employer that an employee needs an accommodation and circumstances will sometimes require the employer to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." *Id.* (quoting *Conneen*, 602 F.3d at 332).

Torres's argument is somewhat difficult to follow, but, as indicated above, it appears she is claiming that by virtue of calling out sick on the days in question she requested "the reasonable accommodation of time off for medical reasons," thereby triggering an obligation on the County's part to conduct an "inquiry," the results of which inquiry would have uncovered the fact that Torres called out late due to her disabilities, a condition that the County could have reasonably accommodated by relaxing its requirement that employees call off at least one hour before the start of their shifts. There are many problems with this argument. First, Torres's calling out sick cannot reasonably be construed as a request for an accommodation.[12] According to Torres's own account, on the dates in question she simply informed the County that she was calling out sick and later submitted supporting doctor's notes. Torres does not explain how or why this should have prompted the County to conduct an inquiry of any sort. Further, according

---

[12]     To the extent that Torres is claiming that her request for FMLA leave constituted a request for an accommodation, it is true that "a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA." *See Capps v. Mondelez Glob.*, LLC, 847 F.3d 144, 156–57 (3d Cir. 2017). But "even assuming, *arguendo*, that [Torres's] requests for intermittent FMLA leave constituted requests for a reasonable accommodation under the ADA as well, [the County] continued to approve [Torres's] requested leave, and indeed, [Torres] took the requested leave. Thus, [the County] provided and [Torres] received the accommodation [she] asked for." *See id.*

to Torres's own argument, the accommodation that she requested by calling out sick was intermittent time off for medical reasons. As the County points out, Torres was already receiving this accommodation. In short, Torres's calling out sick was not a request for an accommodation and, even if it was, the County provided the requested accommodation.

As for Torres's argument that the County failed to accommodate her by "failing to give her any leeway in calling out late on dates which she was not medically able to work, and called as soon as she was able to," as the County points out, despite numerous opportunities to do so, Torres never told the County that her disabilities prevented her from timely calling off work, nor does Torres claim that the doctor's notes she submitted to the County contain such information.[13] An employee is not required to use "magic words" in order to request an accommodation, but there must be some indication, either from the plaintiff's own statements or the surrounding circumstances, that an accommodation is needed. Here, Torres can point to nothing in the record that would have suggested to the County that Torres needed or desired an accommodation with respect to its call-off policy. Accordingly, Torres did not request an accommodation with respect to the County's call-off policy, and the County's failure to provide leeway with respect to this policy (when the need for such leeway was never communicated by Torres or even suggested by the surrounding circumstances) did not constitute discrimination on the basis of Torres's disability. The County is therefore entitled to summary judgment on Torres's failure-to-accommodate claims.

---

[13] Torres contends that if she had "known that she would be disciplined for taking time off for medical reasons, she would have disclosed and discussed her health conditions, limitations and needs." Pl.'s Mem. Opp'n 7. But, assuming for the sake of argument that Torres was "disciplined for taking time off for medical reasons" on the dates in question, she would have learned that she would receive such discipline after her first late call-off in November 2014. Despite this knowledge, Torres never informed the County that her disabilities prevented her from complying with its call-off policy.

**B.     Torres cannot point to any evidence in the record from which a jury could reasonably find that the County retaliated against her for exercising her rights under the FMLA and the ADA.**

As indicated above, in addition to her failure-to-accommodate claims, Torres also contends that the County retaliated against her "because of the time she took off for her health conditions," in violation of both the FMLA and the ADA. Pl.'s Mem. Opp'n 11.[14] Torres argues that the basis for this claim is twofold. First, she contends that the eighteen-day proximity between her January 21, 2016 use of intermittent FMLA leave and her suspension on February 8, 2016, and the nineteen-day proximity between her August 4, 2016 use of intermittent FMLA leave and her termination on August 23, 2016, suggest that she was disciplined and terminated in retaliation for requesting and taking FMLA leave. Second, Torres contends that a consideration of the "record as a whole" shows that there are "inconsistencies and implausibilities" in the County's contention that it terminated her because of her violation of its Time and Attendance Policy and the last chance agreement. Pl.'s Mem. Opp'n 16. In particular, Torres contends that the County "essentially picks and chooses when it follows its progressive disciplinary policy and other policies." Pl.'s Mem. Opp'n 18. In support of this contention, she cites the following exchange from the deposition of Ms. Baittinger, the Senior Human Resources Administrator for the County:

> Q: Let's say someone is late for a callout but as part of the interactive process they inform the manager or HR that they were receiving medical treatment on a specific date, would the County, as a reasonable accommodation, permit that under the ADA?

---

[14]     As explained above, a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA, and the Court will assume for the sake of argument that Torres's requests for FMLA leave constituted requests for accommodation under the ADA. Because the factual basis for Torres's FMLA retaliation claims and ADA retaliation claims is the same, the Court analyzes them together.

A: If they asked for an accommodation, we would provide them paperwork to get further information. But if they said they were calling off because she had a doctor's appointment, then it would be up to each individual supervisor to either ask for a note and determine whether they would mitigate that or not.

Pl.'s Facts Ex. B., Baittinger Dep. Tr. 44:10-45:8.

Torres also cites the testimony of Benjamin Schneider, a line supervisor for the BCRC, who stated that although it was not "up to [him]" whether a grace period should be given for the requirement that an employee call off at least one hour before his or her shift, he was "sure if there's mitigating circumstances" that a grace period would be provided. Pl.'s Facts Ex. I, Schneider Dep. Tr. 8:14-9:3. In addition, Torres cites the testimony of Diane Edwards, Executive Director of the BCRC, that the County's Human Resources department has discretion to follow or not follow the progressive discipline policy and that sometimes Human Resources does not, in fact, follow the policy. *See* Pl.'s Facts ¶ 22. And she cites testimony from Ms. Baittinger that Human Resources has discretion to execute a termination or withhold a termination. Pl.'s Facts ¶ 23. Torres also contends that the County violated its own policies when it terminated her based, in part, on an offense that occurred more than one year before her termination, and when the County "combin[ed] unrelated alleged violations." Pl.'s Mem. Opp'n 18. Finally, Torres contends that the County could have excused her final lateness infraction (concerning the July 2016 overtime shift), which was "clearly an honest mistake" on her part, and as a result of which the County suffered no adverse consequences. *Id.*

With respect to Torres's temporal proximity argument, the County contends that she took leave under the FMLA on a nearly weekly basis for years and, as a result, "any disciplinary actions taken against her during her entire employment would have been within a week of her usage of FMLA." Def.'s Reply Br. 6. With respect to Torres's argument that the County applied its policies inconsistently, the County contends that the only alleged instance of such

inconsistency actually worked in Torres's favor. That is, as set forth above, although the County's policies state that the accumulation of three suspensions in one year will result in termination, the County decided in February 2016 to relax this policy in Torres's case and provide her with a last chance agreement instead.

Torres's retaliation claims arise, at least in part, under the FMLA, which prohibits an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." *See* 29 C.F.R. §§ 825.215, 825.220(c). Since FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law and, more specifically, through use of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Capps v. Mondelez Glob.*, LLC, 847 F.3d 144, 151 (3d Cir. 2017). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. If the plaintiff succeeds, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination.[15]

In order to establish a prima facie case of FMLA retaliation, it is the plaintiff's burden to show that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). With respect

---

[15]     Similarly, the burden-shifting framework of *McDonnell Douglas* applies to ADA retaliation claims. *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 759 n.3 (3d Cir. 2004). Further, "an ADA retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is 'disabled' within the meaning of the ADA," but rather only "that she had a reasonable, good faith belief that she was entitled to request the reasonable accommodation she requested." *Id.* at 759 n.2.

to the third element of a prima facie case—the causal link between the protected activity and the adverse action—a plaintiff "generally must show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). "Moreover, causation, like any other fact, can be established from the evidence gleaned from the record as a whole." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016).

First, with respect to temporal proximity, as set forth above, Torres called off sick late on January 21, 2016, and was disciplined for that late call-off on February 8, 2016. She took three days of FMLA leave on August 2, 3, and 4, 2016, and was terminated on August 23, 2016. These time periods are not, by themselves, unusually suggestive of retaliation. *See Abdul-Latif v. Cty. of Lancaster*, 990 F. Supp. 2d 517, 530 (E.D. Pa. 2014) ("Ordinarily, a period of less than one week is unusually suggestive. . . . [S]ix days is at the long end of what has been held to be unusually suggestive."). But even if these time periods were sufficient for Torres to establish a prima facie case of retaliation, in light of the surrounding circumstances they do not suffice for her to establish a genuine dispute of material fact concerning whether the County's proffered reason for her discipline and termination—namely, her violation of the County's policy's and last chance agreement—was pretextual. "Courts have reasoned that prior approval of numerous FMLA requests counters against attempts to establish pretext through proximity in time." *Garcia v. Penske Logistics, LLC*, 165 F. Supp. 3d 542, 562 (S.D. Tex. 2014), *aff'd sub nom. Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204 (5th Cir. 2015) (granting summary judgment in favor of employer on FMLA retaliation claim where employee was terminated seventeen days after

taking FMLA leave but had requested and was granted FMLA leave twenty-five times over the previous six years without being disciplined). Here, it is undisputed that Torres's requests for FMLA leave were approved in February 2012, January 2013, August 2013, July 2014, and September 2015, and that, during this period of time, Torres frequently used FMLA leave, without any allegations of retaliation. In view of this history of consistent approval and use of FMLA leave without retaliation, a reasonable jury could not find pretext based solely on the temporal proximity between Torres's January 2016 and August 2016 FMLA activity and her discipline and termination. *See, e.g.*, *Distefano v. Essentia Health*, No. 12–CV–2868, 2014 WL 3101324, at *8 (D. Minn. July 8, 2014) (granting summary judgment in favor of employer on FMLA retaliation claim where employee was fired on the very day that she exhausted her FMLA leave, reasoning that because plaintiff had taken FMLA leave on eleven different occasions "without a hint of retaliation from" her employer, it was not believable that she would be fired for exhausting her remaining medical leave).[16]

Nor is Torres able to show causation or pretext from an examination of the "record as a whole," as she has failed to show any inconsistencies or implausibilities in the County's proffered explanation that it disciplined and terminated her for violating its Time and Attendance Policy and the last chance agreement. The testimony she cites from Baittinger and Schnieder simply shows that the County could excuse a violation of its one-hour policy for call-offs if there were mitigating circumstances. But this does not, by itself, show any inconsistency on the

---

[16]     Torres's contention that the February 2016 discipline is indicative of retaliation is particularly puzzling. As set forth above, Torres's late call-off on January 21, 2016, was her fourth late call-off since November 2014 and, under the County's policies, four late call-offs result in a three-day suspension. As this was the third suspension Torres had accumulated in a twelve-month period, the County's policies indicate that she should have been terminated. But, instead of terminating her, the County provided her with a last chance agreement in February 2016. Accordingly, the discipline imposed in February 2016 was an instance of the County varying from its policies in Torres's favor.

County's part, particularly when it is undisputed that Torres never brought to the County's attention the existence of such mitigating circumstances, nor has she pointed to any instances in which the County treated other employees more favorably in this respect. *See Straka v. Comcast Cable*, 897 F. Supp. 2d 346, 366 (W.D. Pa. 2012) (finding that evidence that an employer "permitted its managers and supervisors to exercise a modest degree of discretion in administering its attendance policy" is not sufficient, by itself, to show "that the exercise of that discretion was used as a proxy for . . . discrimination.").

Likewise, the fact that the County's Human Resources department had discretion to vary from the progressive discipline policy is not, by itself, indicative of inconsistency. Again, Torres does not point to any instances in which the County, in the exercise of this discretion, treated other employees more favorably than it treated her. Rather, as the County points out, the only instance Torres cites in which the County exercised its discretion in this area was its decision in February 2016 to provide Torres with a last chance agreement rather than terminate her for accumulating three suspensions in one year, a decision that worked in Torres's favor.

Torres's argument that the County failed to follow its own policies is similarly unavailing. Torres points to the following passage from the County's Disciplinary Guidelines Policy: "All disciplinary action shall be considered active for a period of 12 consecutive months in a compensable status. Should no further disciplinary action be imposed during this 12 month period, the action taken shall remain a part of the record but shall not be considered in imposing discipline beyond the 12 month deadline." *See* Pl.'s Facts ¶ 98. Torres contends that the County violated this policy when it terminated her employment on August 23, 2016, partially on the basis of infractions that were over one year old. But it appears that Torres misunderstands the policy. According to the policy, disciplinary actions expire after one year only if "no further

disciplinary action [is] imposed" during that period. In Torres's case, beginning with her initial disciplinary action in November 2014, Torres never completed a twelve-month period without accruing any additional disciplinary actions. In any event, "[i]t is generally for an employer to interpret its own policies," *Kidwell v. Eisenhauer*, 679 F.3d 957, 971 (7th Cir. 2012) (quoting *Richey v. City of Independence*, 540 F.3d 779, 786 (8th Cir. 2008)), and there is nothing unreasonable about the County's interpretation of its policies in this case. Moreover, Torres's February 2016 last chance agreement was free from any ambiguity, as it clearly stated that "any future Time and Attendance Policy violations in the next twelve (12) months will result in your employment being terminated." Torres's argument that the County "combin[ed] unrelated alleged violations" is also unavailing, as a review of Torres's Disciplinary Action Reports shows that the County tallied Torres's lateness infractions separately from her late call-off infractions. *See* Def.'s Facts Ex. 12.

Finally, Torres may be correct that her final infraction was based on an honest mistake that the County could have excused, particularly in light of Torres's seventeen-year tenure at the County. But this honest mistake was preceded by a history of lateness infractions on Torres's part. Moreover, "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); *see Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006) ("[T]he question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was [the employer's] reason: not a good reason, but the true reason."). Rather, "the non-moving plaintiff must

demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (emphasis omitted). Even if the County's decision to terminate Torres's employment was unjust or lacking in mercy, Torres has failed to point to any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the County's explanation for that decision.

In sum, this Court has considered the record as a whole, including the temporal proximity between Torres's protected conduct and her discipline and termination, and the purported inconsistencies and implausibities cited by Torres. Having done so, the Court concludes that Torres has failed to show sufficient evidence from which a reasonable jury could find that her protected activity caused her discipline and termination. Nor has she shown that a reasonable jury could find that the County's proffered reason for Torres's discipline and termination was pretextual. Accordingly, the County is entitled to summary judgment on Torres's retaliation claims.[17]

**C.      Torres cannot point to any evidence in the record from which a jury could reasonably find that the County interfered with her FMLA rights.**

Torres contends that the County interfered with her FMLA rights when it disciplined her for calling off work late during periods in which she had been approved for FMLA leave. The

---

[17]      In addition to her claim that the County terminated her in retaliation for requesting an accommodation for her disability, Torres also claims that the County terminated her simply on the basis of her disability, in violation of the ADA and the PHRA. For this claim she relies on the same arguments as those presented in support of her retaliation claims. Accordingly, this claim fails for the same reasons that her retaliation claims failed, as Torres has failed to point to evidence from which a jury could reasonably find that the County terminated Torres on the basis of her disability.

County contends that Torres was disciplined and terminated for her failure to follow its Time and Attendance policies, not for taking FMLA leave.

The FMLA prohibits any employer from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any right provided by the Act. 29 U.S.C. § 2615(a)(1). Interfering with the exercise of an employee's rights includes not only refusing to authorize FMLA leave, but also discouraging an employee from using such leave. 29 C.F.R. § 825.220(b). To prove an FMLA interference claim, "a plaintiff must show that: (1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the employer of her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which she was entitled under the FMLA." *Atchison v. Sears*, 666 F. Supp. 2d 477, 488 (E.D. Pa. 2009).

In light of the fact that Torres was granted all of the FMLA leave she requested, the only possible sources of interference are (1) that she was disciplined or terminated after she was granted intermittent leave, and (2) she was discouraged from taking FMLA leave. *See Calero v. Cardone Indus., Inc.*, No. CIV.A. 11-3192, 2012 WL 2547356, at *16 (E.D. Pa. June 29, 2012). With respect to the first theory, as explained above, a reasonable jury in this case could reach only one conclusion: the County terminated Torres for her violation of its Time and Attendance policies and the last chance agreement, not for her FMLA activities. With respect to the second theory, Torres does not claim that she was discouraged from taking leave, nor is there evidence in the record to support this theory. Accordingly, the County is entitled to summary judgment on Torres's FMLA interference claim.

**D.     Torres cannot point to any evidence in the record from which a jury could reasonably find that the County subjected Torres to a hostile work environment.**

Torres contends that she was subjected to a hostile work environment on the basis of her disabilities when she was "criticized and ridiculed by her co-workers for having FMLA-approved leave." *See* Pl.'s Facts ¶ 74. As detailed above, Torres's coworkers allegedly made comments such as "oh, you're here today," "oh, you showed up today," "wow, you actually work here," "oh, you made it to work today," and "I wish I had a doctor that would put me out of work for one month." In addition, Torres's supervisor, Brandon Witmer, allegedly told her that it is "a shame that people have diarrhea."[18] Further, Torres cites the testimony of Linda Eckstrom, a former shelter counselor for the County, who stated that she heard staff members make negative comments about Torres's use of FMLA leave in the presence of supervisors, who did and said nothing in response. Pl.'s Facts Ex. L, Eckstrom Aff., ECF No. 33-12. Torres also cites the testimony of Ben Schneider, a supervisor, who stated that sometime around 2015, Torres came to him to complain about her coworkers making negative comments about her attendance or use of FMLA, but "she didn't give me any details as far as who, when asked." Pl.'s Facts Ex. I, Schneider Dep. 24:19-25:20, ECF No. 33-9. And she cites the testimony of Brandon Witmer, also a supervisor, who stated that Torres's coworkers complained to him "due to the added workload for some of her calloffs." Pl.'s Facts Ex. H, Witmer Dep. Tr. 20:18-23, ECF No. 33-8.[19]

---

[18]     Witmer denies both that he made this statement and that he was aware of Torres's condition. See Def.'s Br. Supp. Mot. 10-11, ECF No. 30.

[19]     In addition to these comments allegedly made in Torres's presence, Torres also testified that a number of additional comments were overheard by a coworker named Tina Pia, who subsequently reported the comments to Torres. *See* Pl.'s Facts ¶ 74. The Court places little weight on these statements, however, not only because of their second-hand nature but also because Torres's description of these comments is vague: "From what I can recall, [Pia] would say that they would laugh and joke about me not really being sick or taking advantage of time or

The County contends that the alleged comments are related to Torres's absenteeism, not her disability, and that there is no evidence that the persons who made the alleged comments knew about her alleged disability. Further, the County contends that the alleged statements are neither severe nor pervasive. The County also contends that, with the exception of Witmer, none of the alleged harassers were supervisors, and Torres cannot show that the County was negligent in failing to discover or respond to the harassment. Finally, the County argues that Torres never filed a complaint about alleged harassing conduct, despite her knowledge of the County's harassment policy, which provided an avenue for such complaints.

To succeed on a hostile work environment claim under the ADA, the employee must show the following five factors:

> (1) [she] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 151 (3d Cir. 2017) (quoting *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999)). The alleged harassment "must be so severe or pervasive that it alters the conditions of the [plaintiff's] employment and creates an abusive environment." *Weston v. Pa.*, 251 F.3d 420, 426 (3d Cir. 2001). To determine whether comments were severe or pervasive, courts evaluate "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance."

---

just basically not taking my FMLA serious or just thinking it is—that I utilize time that I shouldn't have." Pl.'s Facts Ex. A, Torres Dep. 109:5-9.

*Whitesell v. Dobson Commc'n*, 353 F. App'x. 715, 717 (3d Cir. 2009) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).

First, as the County points out, most of the alleged statements simply comment on Torres's frequent absences from work and say nothing about her disability. Indeed, there is no evidence in the record that the coworkers alleged to have made most of the comments—Ralph Maldonado, Dave Davis, and James Stednick—even knew that Torres was disabled. Under these circumstances, the comments attributed to Maldonado, Davis, and Stednick cannot be said to be based on Torres's disability. *See Barclay v. Amtrak*, 240 F. App'x 505, 509 (3d Cir. 2007) (observing that the Third Circuit has "rejected a theory of harassment so broad as to dictate that any time a supervisor harasses an employee for absences the employee claims are due to a disability, that harassment is based on the employee's disability under the ADA") (citing *Walton*, 168 F.3d at 664, 667). Even if Torres could show that the alleged comments were made on the basis of her disability, she cannot show that the alleged comments were severe or pervasive. The comments were occasional in nature and, in any case, were not offensive, as, again, they simply remarked on the fact that Torres was often absent from work. [20]

The only comments arguably based on Torres's disability are those attributed to Jamie Himmelberger ("I wish I had a doctor that would put me out of work for one month.") and to Brandon Witmer ("It is a shame that people have diarrhea."). These comments were neither severe nor pervasive. Himmelberger's alleged remarks have more to do with Torres's absences than her disability and Witmer's single alleged remark, while inappropriate and unkind, was not, either in itself or in combination with the other remarks attributed to Torres's coworkers, so

---

[20]     One of the comments attributed to James Stednick was actually encouraging in nature, telling Torres that "[w]hen you come to work you're a good worker."

severe as to alter the conditions of her employment. Accordingly, the County is entitled to summary judgment on Torres's hostile work environment claim.

**V.      Conclusion**

For the reasons set forth above, the County's Motion for Summary Judgment is granted. A separate order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge